All right, Madam Clerk, did you show Mr. Cantu check-in? Mr. Bailiff, would you go down there to the, I guess, the attorney lounge? Maybe that's him. Mr. Cantu? All right, we've called you up. All right, sir, we're ready. Thank you, if it pleases the Court. Walking downtown yesterday, I couldn't help but think of a similar situation 51 years ago when James Garrison gave a 15-page opening statement to the only trial in the Kennedy assassination. He went page by page, fact by fact, over the entires of Bruder Tape and all of the Warren Commission's findings, both factually and speculative, and had a very hard time linking up what he said to be the truth. In this particular case, we have a similar circumstance where we must look at everything in the light most favorable to the bank in order to conclude that a second foreclosure is appropriate, and that is caused by the juxtaposition. Before we go there, can you address the Rooker-Feldman Doctrine? Yes, ma'am. I think that this case meets all proper tests of the Rooker-Feldman Doctrine because the plaintiff's loss below. There was a judgment given in September of 2016 where a judicial order of foreclosure was issued. Now, in Texas, what's required after that point is the non-judicial portion for the bank to take that order, to place the property for sale at the courthouse steps, and to follow through. Well, they didn't do it. After completing the judicial process, they went back with a different servicing company who apparently either did not know, was mistaken, or at worst case is running up the expenses to the double degree, to the debtors, and refiled the entire process again. The second portion is that the plaintiff, or the appellant in this case, did complain to the state court jurisdiction. We filed a lawsuit, which is our specific constitutional right under Texas home equity law, to challenge the second expedited foreclosure. And if you look at the record, we're very specific. We said that these debtors wished to buy back their property, and they refused to pay double charges for double attorney's fees, double litigation, and double costs, where the bank is doing a second unnecessary foreclosure on the property, and that they shouldn't have to. Specifically, the home equity law allows for the bank then to dismiss its initial expedited foreclosure case and proceed under the terms of the second what they call private cause of action, and that's what was removed to federal court in this case. The third problem is that our actions were subsequent in time. The first judgment is 2016, and our lawsuit was filed after some six months. But the losing plaintiff is you, your clients. They filed the lawsuit in state court, not federal court. Yes. And it's only removed here by virtue of diversity. Yes, Your Honor. What's your best case that says Rooker Feldman applies when the defendant, who is not the losing party, simply removes to federal court to change the forum? I don't have one. This case is unique in that we have a bifurcated system of foreclosure in Texas to where the second cause of action, the private cause of action, in response to an expedited foreclosure proceeding is filed by the homeowner, and I have no federal authority to where now that case is being removed by the bank. And we argue in equity it would be inappropriate for them to remove it and argue out of both sides of their mouth that in one case there's res judicata and collateral estoppel, but in the other case we should remove this case and have it done expeditiously in federal court. And finally, of course, the fourth prong is that we ask the federal court in this case in our pleadings to set aside the relief that was granted below because of the ongoing foreclosure process exceeding the original term allowed. Now, in my first argument, I go over the statute of limitations problems, and in this case that expedited foreclosure procedure is what seems to be causing all of the disputes. Texas sets up the only allowed instance where a homeowner can get a loan on their homestead under the Texas Civil Practice and Remedies Code 16.035A, which tells us mechanically how to handle its breach. Of course, the homestead statute comes directly from the Texas Constitution in Article 16, but the Civil Practice and Remedies Code gives us the two manners and methods by which the bank should remedy default. Now, the bank argues that they're mutually exclusive, and I say no, that's absolutely categorically not true. If you read the rules, they talk about steps A and steps B. Also, B is explained in effect under the Texas rules as to what to do with that order once you obtain it. Section A specifically says that the bank tolls the statute of limitations if they file their lawsuit within four years. Now, it's talking, of course, about their expedited petition for foreclosure. But that same Texas Constitution says that the debtor, if you want to do discovery, if you want to dispute any of the facts alleged by the banks, if you want to create any issues for the court to review, you must file your own cause of action. Those things are not allowed under step A. So if the homeowner has any disputes whatsoever, they must file their second private cause of action, which the bank calls, and proceed in that specific instance to challenge any of the above issues. Section B specifically says what you do with a judicial order of foreclosure afterwards, and it's very specific. It says once you have that, the sale, the sale of the property, following through with your judgment, the execution of the judgment, must occur within four years of when the cause of action accrued. Under these facts, it would be when they issued their notice of intent to foreclose in 2012. September the 18th is what the record says. Now, the bank wishes to say that all of that was reset, that they sent a new notice of default in 2014, and that will reset the clock and get them another four years, except realize none of their authorities speak of a case like this. None of their authorities say that the letter, notice of default, which does not give you the option of either paying off the balance, paying less than the balance, having a reinstatement fee, or having a renewal fee, is given. So the court has to interpret or guess what the intent of the bank was by sending this new notice of default. The cases that are cited by the defendant in their brief, let's see, Boren and Leonard talk about rescissions of notice of acceleration. That's a totally different creature. You can abandon an acceleration, which is notice to the debtor that the entire debt is due in full, by sending a specific rescission. The Texas legislature even codified this principle by saying that simply a letter must be proven that it was sent. Not that it was received, but simply that the bank sent the letter will reset the statute of limitations to give them an additional four years to follow through. That is not those cases, and that is not this case. They simply sent a general letter giving the homeowners that they were in default in 2014, and now they want to rely upon it in two ways. They say the homeowners should be stopped from a collateral attack because it was already decided below. Yet if you read our specific statutory responses, home equity law specifically says rest judicata does not apply. You cannot argue that in this particular circumstance because this is a unique legal situation where these types of loans are regulated by the Civil Practice and Remedies Code. Further, the Texas Rules of Civil Procedure 736.9 say very specifically that if you don't complete these two causes of action, both the judicial foreclosure and then following through with the sale, it becomes void. You cannot collect upon the debt. Now it sounds terribly onerous to tell a bank that you've loaned this money, you've waited for payments, you've filed your lawsuit, you've obtained a judgment, but if you don't follow through and sell the property within four years, it is void. But that's exactly what the Texas Supreme Court told all of us in the Landers case, Nation Star versus Landers. Four years is four years, to quote the court directly. If you don't finish it in that amount of time, you're out of luck. So this particular case, in argument number one with statute of limitations, there are two things that are principally wrong with it in the fact that this is a summary judgment. The first is you must assume as a matter of law that a notice of default is now proof positive of resetting the clock. Abandonment of the acceleration and starting all over again because there is no statutory support for that, nor is there precedence saying that a notice of default without any particulars or any specific facts is now as a matter of law resetting the clock in terms of abandoning the acceleration. So in our arguments about the summary judgment, we pointed out to the court that the court is not taking anything in the light most favorable to the non-movement. Rather, it's deciding simply what could be a fact issue as to what they meant by the intent of this notice of default and arguing that the summary judgment should be granted as a matter of law and I can't attack it factually because there are no specific facts to attack. Furthermore, the conflict in 736.9 between their interpretations of what the current law is for accelerated notes versus the private cause of action really should be resolved. It would not be inappropriate for a certified question to go back to the Texas Supreme Court to say if the limiting language of 736 in Article 16 applies to both Part A and Part B, the accelerated notice of appeal when it's filed by the bank as well as the answer, the lawsuit filed by the debtors in response to that accelerated notice of appeal. It would seem to me that the rules would apply equally to both parties because that would make the most sense. Finally, Your Honors, in Issue No. 2, we tried to analyze the court's decision in the district court by saying that collateral estoppel and abandonment are decided against the appellants and we don't think that can be true in this particular case for the reasons we spoke about with the statutory arguments about collateral estoppel not applying in home equity loan cases and because if you think about it, they wish to have it two ways. We have a previous judgment. We're not going to allow you to collaterally attack it, but now we're going to claim to have abandoned it, to waived it, to raise a new specter of a new question or point of law and start all over again. So they want the benefit of collateral estoppel and the benefit of simply ignoring, setting aside, or dismissing entirely the very first case and the judgment they approved. What they're doing here is creating an infinite amount of time for banks to foreclose on properties. There is no statute of limitations. By simply sending a default letter to the debtor, they can reset the clock even after completing litigation and taking a judgment. Part B is set out there in the Civil Practice and Remedies Code and tells them they have now, they must use the existing law and follow through and complete the sale within four years, but they're trying to say, no, no, no, no, no. Our abandonment of our judgment will reset the statute of limitations for that as well. And that makes no sense, and I cannot find that type of language or that type of analysis in any of the mortgage cases involving Texas or the Fifth Circuit. What you're doing is making an overly broad, totally encompassing, non-statute of limitations type of category with the banks. And all of those things are rejected by the cases of Landers as well as Callan. In Callan, the court specifically warns about this endless cycle, and last-minute or 11th-hour cancellations to beat the statute of limitations by three days are not appropriate. And if you think about it, it makes perfect sense. And attorneys never say that about statutes, I would argue. Part A says you must file within four years. If you file your accelerated notice of intent and your accelerated request for a judicial decree of foreclosure, the clock is told. It doesn't matter if your litigation takes two years. The statute is told for those two years. Once you have your order of judgment, Part B specifically says you have the remainder of that four-year time to complete the sale. If you do that, it takes two months to do that. There is no excuse for why the bank simply chose to ignore it. Now, the bank wants to argue equity and will tell the court that there have been no payments by these debtors, and I would point out either offered or accepted by the bank since 2007. So it begs the question, what on earth were they waiting for for the last 11 years to foreclose on this property? Once they had their judgment again, the question is, what were they waiting for? I think the best explanation is the hypothetical we put forth in our brief. The servicing company changed. At present, it's Selene. Selene did not know about the initial litigation, did not know about the judgment, and simply started the process all over again. The debtors do not think, by contract, using both the deed of trust and the original lien note, they should have to pay for duplicate services and two sets of attorneys to obtain the same result. Since you mentioned Selene, then address the matter of this release that we were apprised of while the case was on appeal to us. We asked both sides to file letter briefs and so forth. What was presented to us was that the whites entered into this agreement with Selene, who's now the loan servicer, that appeared to release DLJ from all these claims, et cetera. The other side said in their response that they weren't aware of it, et cetera, but in effect that mooted the claims here. So what was the purpose of entering into this agreement, and what do you say? We'll ask him when he comes up. Why doesn't it moot all of this? We think that it's void because it was done contrary to all the rules, the canons of ethics, and to the procedure code. Neither attorneys, and I believe counsel at his word, had any notice of what was going on. My clients were very specific in our response. They were approached by a realtor, a non-attorney spokesperson, who gave them money to clean the property upon their exit because the foreclosure has gone through and the bank has taken title back in its name. And they were offered money in what's called a cash-for-keys settlement situation. Now, it's not a settlement because there's not a formal document, we thought, until that appeared from counsel sent to me. On the last page, if you see right above the signatures, there's a paragraph that releases any and all causes of action for anybody for any time amongst these parties. Neither attorneys were aware of this. The clients are not understanding the impact of what they signed, and they have not been paid. So that agreement, arguably, is moved as well because the clients did not surrender the property for the cash. There was no consideration exchanged, and the document was done in violation of all the rules and ethical procedures that we as counsels attest to. Are they still in the property? That's not clear to me. No, ma'am. They have vacated it. In the title, they signed something transferring title. No, ma'am. It was foreclosed upon. The substitute trustee did that. There's been a foreclosure. Title's transferred. They've moved. Yes, ma'am. Why isn't the case over? I mean, I know that's probably a dumb question. You can tell me that if you want to. I won't be offended. But why isn't this case kaput? Because the argument here is that the procedure was done inappropriate and the court order finding it should be allowed to go forward is what we're appealing. Well, we've got a whole different situation. After all of this has happened, you say the trustee foreclosed. When did that happen? This year. Okay. I believe in September, October. You're not attacking that foreclosure in this lawsuit. No. So it's over. It's been foreclosed on. What's left to fuss about? The costs and fees. These people are trying to buy this property, yet the price tag they're being given to do that includes duplicate filing of this lawsuit, which is what we challenged at the very beginning and were a summary judgment of doubt as having res judicata and collateral attack. It seems to me you filed suit on the cash for keys contract. That has nothing to do with what happened. Whatever happened prior to foreclosure, it seems to me, is over. And my prediction would be the exact same thing would happen. It would be removed to federal court and the same exact briefing. Well, let's see. Well, here's our problem. Judge Owen, the damages we have from this second lawsuit can only be challenged in this case. That's what our pleadings are doing, challenging the duplicative foreclosure proceeding upon which this house was sold. So if we void out the judicial foreclosure proceeding and the second proceeding, then the sale that went through this year is also void and can be set aside. Our damages are from all the excessive costs from that second filing. We're going to have to eat those and waive them if we accept this as moved. But you don't have an order stopping the foreclosure. What if you filed in any court that says the foreclosure that happened this year is void? We do not. But our problem is with the second filing. We did file suit. To me, so what? Foreclosure, the property's gone. Yes, Your Honor. And see, initially it was stopped by an injunction granted at the state court level. It's now gone. The property's gone. Nobody's getting any fees from you. Nobody's asking for fees. They foreclosed. Title's passed. What's there to fuss about? To purchase the property back, they have a bill which includes this litigation cost for the 2016 case. Well, file a lawsuit about that. We did. That's what we're here about. Okay, I don't understand a lot about this case. What is the specific relief you're asking us for here? Now, I've got another question after that, but just tell me in a declarative sentence, what is the relief you're seeking from this panel? Overall, the order granting summary judgment is inappropriate in this case. Deciding issues of fact is a matter of law regarding abandonment of acceleration. Which puts you back to what? Litigation in the federal court where we can continue with litigation over. So what's the relief then you would be seeking in the district court? The costs and fees for duplicate filing of foreclosure. As unnecessary. That costs and fees. Yes, Your Honor. And arguably at that level, if they're going to continue to insist that they waived and abandoned their initial acceleration, wouldn't that apply to their judgment? Well, the costs and fees you're talking about that you would seek to get in the district court, does that not all relate back to the original state court judgment? Yes. So why isn't the relief you're asking inextricably intertwined with the original state court judgment? Whether you're talking about fees, whatever. I mean, doesn't it all go back to that point? It does, Chief Justice Stewart. And Judge Garcia, in his order, dismisses our claims against that, challenging it with prejudice. So we can't refile it. Well, from my eyes, left to be convinced, if it all finds its way back to that original state court judgment, whether you're talking about fees or whatever, you are through the back door still trying to attack or undermine or get relief based on a judgment in the state court that was rendered again, and that to me is quintessential Rooker-Feldman. It doesn't have to be the case where the plaintiff, in this case, is removed by the defendant, but if all your relief finds its way back to that, I just don't understand how it doesn't flow back to that original judgment, no matter how you characterize it, fees, this, that, and the other, but you've got to get back to it. To me, that goes back to Rooker-Feldman. I understand what your argument is, but I'm just saying that's that. Then secondly, to the points that have been made here, putting that aside, it's just still hard for me to see how there's a justiciable controversy here for the federal court, given the foreclosure, all that's behind the boards. It just seems like this is an avenue to collect some ancillary fees and so forth that have nothing to do with the property they're not in. I mean, we're not a collection court. Understood, Your Honor. But see, the problem is with their theories that have advanced in this court and put on the record in this proceeding and their pleadings. If they're going to argue, waver, and abandon— Well, I'm not talking about what they're arguing. You're the plaintiff. You're the one who's—you're the plaintiff, and I'm trying to cut to the chase. You're talking about fees and this and that and the other, and that's not why we're sort of in the business to be doing it. But you've got your rebuttal time, but I wanted to ask you that straight up, along with the questions my colleagues are asking about. You know, they're not in the property. It's foreclosed. I mean, all that stuff is going. It just seems like continuing litigation about a lot of ancillary things, but it seems like it's beyond us. But that's just to set the point on that. You've got rebuttal time. Let's hear from the other side on all these other points, and then you'll have another opportunity to respond to all that's been said. Yes, sir. All right. Okay, Mr. Conner, help us out here. You might as well start where we're ending. We've just got a whole lot of loose issues here about this foreclosure. They're not in it. It's removed here by the defendants. We know what Rooker-Feldman definitionally says, but still to me, it all goes back to the original judgment and the claim they're asking. We've been asked the questions about, you know, why isn't this case gone? You know, I mean, why isn't it moved in that sense? Now we get something added in about a release agreement that the lawyers in front of us knew nothing about. Who is this third party who comes from Morris or wherever? You know, get the clients to sign this so we got that now in the pot. You know, the release. The district court never saw that. So, A, even if that's here, why should we deal with it, not send it back to the district court to deal with? Sort of all of the above. So help us out from your side. I'll do my best. Mike Conner first, or DLJ, and Selene as attorney in fact. Counsel? I think we should start where we are today and kind of move backwards a little bit. And both Judge Owen and Judge King, as well as Chief Stewart, have, I think, hit the nail on the head. That is, in September of this year, the whites signed an agreement that released all claims that have anything to do with anything. That was pursuant to a post-foreclosure eviction process. And I'm going to speak a little bit out of school here, and out of school in terms of these things are not in the record. Secondly, I am not apprised of the entirety of the detailed operations of my client's real estate side or their foreclosure side, as it typically doesn't affect what we do. But these are compartmentalized operations. That is, after foreclosure, once foreclosure has occurred, which it did in this case, and it occurred because, A, first of all, you have a 2016 state court judgment that includes a specific judgment permitting foreclosure, which is, as we have argued, completely consistent with the Texas Constitution and the home equity lending provisions therein, as well as the Civil Practice and Remedies Code provisions that are pertinent here, vis-a-vis accrual of causes of action on installment notes such as mortgage. So we've got an order permitting foreclosure, 2016 judgment. My client attempted to foreclose, and a lawsuit was filed by these plaintiffs to stop that foreclosure. They obtained a TRO. That's the case that got removed. That is, 2016 judgment's in place, says go forth and foreclose. My client goes in 2017 to foreclose and is stopped by TRO. That is the case that got removed. That is the case that's before the court. But that's moot because now foreclosure has occurred. Foreclosure has happened. So we were only here to stop foreclosure, but now foreclosure has happened, so why are we still here? I don't think we should be here. I think this case is moot. I think we have a complete contractual release. Foreclosure has been completed, and most recently we provided the court a further notice, which was a second signed acknowledgment of the whites having vacated the property. Why shouldn't we just dismiss, and if they want to file some state court or federal court action to try to challenge? That is the correct result. This case is moot if they want to go forth and say, wait a minute, that was a bad deal, or we didn't know what we were signing, or whatever their state court claims might be, vis-à-vis a release agreement they entered into. But this case is no longer, there's nothing in controversy. You have before you what appears on its face in clear objective language, a complete release. Your client did foreclose. Yes, Your Honor. Nothing was done to supersede the judgment, to suspend the judgment. No steps at all were taken to suspend the judgment in this case, which left us free to go foreclose. He keeps talking about fees and duplicative fees, and that's why we're here. I'm going to confess. I've had a hard time getting my head around exactly what theories it is we're arguing here. He talks about a second foreclosure. There's no second foreclosure. There was one foreclosure. Perhaps what Mr. Cantu is saying. A foreclosure action, and now they're trying to recover the fees for a duplicative foreclosure suit. Let's step back for a minute. This is a home equity loan under Texas constitutional law. We get nothing but the property. These are nonrecourse loans as a matter of constitution. Now, one might suppose that if these borrowers had built some equity, that equity might be affected by whatever permitted costs and fees got plugged into a bid price at a foreclosure sale, but it is worthwhile to keep in mind. This is a loan that was taken out in 2003, 2004, and there has not been a single payment made for over 11 years. These folks have lived rent-free, mortgage-free for 11 years. But apparently this council does not propose that they live or anybody live free of his fees. I don't understand, Your Honor. Which fees? I don't know. I gather that what he may be talking about is his legal fees. I believe what Mr. Cantu, and he can certainly address this, I believe what he's referring to is after the 2016 judgment, there was a new Rule 736 under procedural rules of the state of Texas proceeding filed by the current servicer, then current servicer, to get approval to go foreclose. It probably could have been, it was in all likelihood an oversight. Wait a minute, we already have a judgment from a state court that permits us to do this. We don't need both. Nevertheless, somebody went down to the courthouse and filed a 736 to get things rolling so they could move forward with foreclosure that they were entitled to. Maybe it's the fees of having to deal with that, he's speaking. What kind of fees? Well, the way the process works, as the court I'm sure is aware, is the lender may go into state court and use these specialized procedural rules to get an expedited treatment order permitting foreclosure. If the debtor chooses, the debtor may file a separate lawsuit challenging some aspect of the loan transaction. That 736 procedure brought by the lender is immediately mooted. It's dismissed. It must be dismissed if this new lawsuit is filed. So it was this new lawsuit that they filed in response to the 736. So filing fees, whatever it cost the lawyer to put together a petition to attack on whatever basis, and it is that separate proceeding to forestall or to eliminate the 736 request that we then answered and removed, which is this case, if that's not completely unclear. To clarify, I know it's a little bit confusing procedurally, but that's what we have. What did their complaint in the second suit say? They got a TRO to stop the foreclosure. They did. They said we were barred by limitations. So what happened to the TRO? Did it just expire on its own terms? What happened to that? Nothing happened after removal, so it expired on its own terms. And they didn't renew any kind of, obviously, any. So what are they seeking? So based on the live pleadings, what besides the TRO were they seeking in the state court action? They were trying to say, I believe, my best perception of what they were doing, is that we were barred from actually foreclosing by passage of time, by limitations. And in order to do that. Did they mention fees? Anything else besides? I'm sure they had a general prayer that said all other relief. They didn't talk about, you can foreclose, but you can't double charge us, or something to that effect. I have no recollection of any such. And another thing that I think there is no indication in the record is counsel's representations that these people have at some point in time wanted to, quote, unquote, buy the property. I have no recollection of anywhere in any of the record, or anything I've seen related to this record, that these folks have ever said, hey, give me a minute. I've got a third-party lender. I want to buy this out. What's he said? They haven't been paid under the contract. How much was supposed to be paid, and for what? Oh, the recent contract. Yes. They have been paid. I haven't seen a copy of the counsel check. And who paid them for what? The real estate agent that manages property post-foreclosure for us, and either A, leases it out, or B, puts it back on the market for sale to a third party, is, my understanding, generally authorized to do a cash-for-keys to expedite getting folks moved out, right, the constable's office going to the JP court and going all through that. That proceeding was ongoing, but they have the authority to go contact these people and say, look, you know, we'll pay you a few bucks if you want to just make it easy on everybody. The title has been transferred. Ownership has exchanged. You are now a tenant at Sufferance. We can either fight it through the JP court and keep on going, or we'll give you a check if you want to move out. That's what they were authorized to do, and that's what they did do. And, in fact, even in the correspondence that Mr. Cantu provided to the court with his letter in response to the court's inquiry about that release, I think the last thing in the chain of communication between the real estate folks and the debtors was, hey, I'm no lawyer here. I'm just a real estate agent. I heard that there's a problem, and I won't be able to release a check until you've checked with your lawyer and get things worked out. So subsequent to that, November 6th, I think, is the signature date on the most recent document we provided to the court, which was when the folks said, okay, we're done. We cleaned it up. Anything that's left you can throw away. We're out of here. So they've surrendered the property. That suggests to me that these people did what they wanted to do. But, once again, if there's a problem with that process and there's no ethical violation here, there's no indication anywhere that some lawyer inappropriately contacted a represented party, and I think that's the implication here. It's a real estate agent who has authority to act as a real estate agent and facilitate the move out from a property it's managing. That's all that is. She says in her own email, I'm not a lawyer. You better check with your lawyer. Apparently there's a problem before I release the check. Well, they've now released the check. Now the people have moved out. We're done. That case is over. There's a complete and broad release of everything that has to do with the loan, the mortgage, the property, the foreclosure, everything. It's gone. And there's no way that my client can go and try to recover anything from anybody that might have been a cost to us of going through litigation because the text of the Constitution says you don't. All you get is the property, non-recourse. And I think it is patently clear that there's no equity in this property. If I may, on the Rooker-Feldman issue, I had to scratch my head hard on that one. I really did. And I understand the court's concern here, obviously. I mean, it's jurisdictional. That's where we start, right? I don't believe this is a Rooker-Feldman problem. And I go back to a citation we made in our letter brief on that to Judge Posner where he said if somebody's coming in and trying to simply avoid the effect of a prior judgment rather than to attack it, i.e., to make an end run rather than to get a revisit of that decision, that's not Rooker-Feldman. That's res judicata. That's what we got here is res judicata. What they've done from the borrower's side here is this 2016 case, they sued the lender also in one of those 736 proceedings, separate lawsuit. Lenders, 736 goes away. They're required to come back in. In that case, the lender counterclaimed and said, okay, I'm counterclaiming for judicial order of foreclosure on this property. In that case, the same 2012 acceleration was the basis of a limitation or an argument, and I think it was a limitations argument then as well, that the lender could not prevail. Well, in fact, it was proven conclusively in that case on that counterclaim that no, that 2012 acceleration was abandoned in February of 2014 with a new notice of default and opportunity to cure. And these notices of default and opportunity to cure are just that. The lender comes in, and in this case it's a subsequent servicer, and they take a look at the books and records, and they say these people have been in default for a while. Let's get in touch with them. As the court is well aware, there's all kinds of federal regulation now about what lenders may and may not do when they want to go foreclose a property. They have to give folks an opportunity to get things right. That's why these things can, admittedly, in unusual cases, take 11 years of nonpayment before we finally get to the point we're at because we have to give these folks a chance. And sometimes they do say, oh, well, maybe I can find some other money. No evidence of that here. Sometimes they do say, here's a problem. Can we make a deal? Can we do a workout? Whatever, whatever. All of that kind of thing may or may not have transpired at some point in history, not part of our record. What is part of our record is there's a 2016 judgment that says, no, no, no, your 2012 notice of acceleration was abandoned by this notice of default and opportunity to incur in 2014. And the next month, March of 2014, the note was accelerated, which kicks in the Texas Civil Practice and Remedies Code, Chapter 16 accrual periods for these installment notes. So one of the two methods by which to go forward with foreclosure is through a judicial process, a judicial foreclosure process. That was the counterpoint in the 2016, in the case that leads to the 2016 judgment. We're entitled to foreclose. We got that order of foreclosure on a conclusive finding that the acceleration occurred in 2014. So fast forward for a minute to this case. When was the order in this case granting summary judgment entered? Long before four years from 2014 had expired. That four-year period had not yet expired when judgment was entered in the second proceeding. On the same basis, by the way, because once again in the 20, in this case, this limitations to defense was also raised. Wait a minute, you accelerated in 2012. And we said, raise judicata. We've been down that road in the state court judgment and the district court agreed. Raise judicata. You don't get a 2012, 2014. And, oh, by the way, we independently proved it in this case, 2014. It's not Rooker-Feldman. It's raise judicata. Now, this abandonment issue, I don't know what abandonment is. Abandonment, the fact that somebody may have inadvertently filed a 735 proceeding they didn't really need to file, that doesn't seem like an abandonment, a Texas judgment list for 10 years. That's not mentioned in the federal district court's judgment. Abandonment? None of that is. Right, that's what he's arguing. All we've got in front of us is a federal district court judgment that doesn't deal with any of this. That's not an issue in this court. I agree 100 percent, but that's what I heard argued here this morning was that we somehow abandoned an initial foreclosure. Well, there's only been one foreclosure. I'm almost out of time. The court is right on top of this, I believe. We have no controversy anymore. These people have now released the lender, all representatives of the lender, for everything doing with his property. They've moved out. They've got their check. It's over. If he wants to file another lawsuit, if they want to file another lawsuit in state court and say something was untoward about the way that happened, so be it. Another case for another forum for another day. All right. Thank you. Thank you. Mr. Cantu, any final words? To focus on your previous concerns, Chief Judge Stewart, what we're seeking in this case is not to have a federal court order eliminating the statute of limitations cause of action from the 2016 filing. We specifically pledge to All right. Let's stop. Let's stop right here. We've got a federal court judgment in front of us. It says the only issues you raised deal with the foreclosing and limitations. You waived your breach of contract. You waived your good faith and fair dealing. So all we were talking about was nonjudicial foreclosure. Okay? That's all we had. No fines and fees. You didn't argue that to the federal district court. There was a judgment that doesn't deal with that. You can't argue to us anything about fees at all. That's not in front of us. Now we find out the property is foreclosed. It's gone. So it's over, isn't it? What relief could we possibly give you from this federal court judgment that would mean anything? If Judge Garcia's decision that the statute of limitations attack on the nonjudicial sale is inappropriate, is set aside, then it becomes void. That's, with all due respect, gibberish. Well, Your Honor, that is if you don't assume that there are two statute of limitations here. And it all goes back to what We've got a state court judgment that unequivocally says in 2016 that the bank has a right to foreclose. We have a federal court judgment in front of us that resolves that issue against you. And since then, foreclosure has occurred. There's no relief we can give you. Foreclosure has occurred. There's nothing we can do to help you. My only response would be 16.035B. Which is what? Texas Civil Practice and Remedies Code specifically demands that the sale will begin within four years from the date the cause of action accrued. Sale. Completion. The property has been foreclosed. Your suit in state court that got removed here was to forestall foreclosure. And that's what you asked the federal district court to do was to forestall foreclosure. You wanted to quiet title and get title of the property. The district court said no. You lose. In the meantime, the property has been sold. So setting aside the federal district court judgment does not change the fact that the property has now been sold. We can't grant you any relief, your clients any relief. That would be to say that Section B is not encompassed in the definition of the word foreclosure. Foreclosure is a two-part process. Has foreclosure property on this property occurred or not? In September of 2018. So what would reversing the district court's judgment, that would not undo the foreclosure in 2018? Judge Orlando's order finds or rejects the statute of limitations attack. Flat out. It's an absolute defense. It doesn't undo the September of 2018 foreclosure. Even if we would agree with you, facts have overtaken us. The foreclosure is final. That would not change the fact that the property has been foreclosed upon. We can't give you title back. I understand that. But here's our problem. They have a court order saying you're allowed to foreclose in 2014. Or 2016, rather. They're given this order in 2016. They started it with a 736 filing. We filed our lawsuit challenging it. They dismissed their case. They obtained their order. Now, Part B to that process is the actual sale. In the meantime, we challenge that again when they refile and start the whole thing all over again. The TRO expired. You did nothing to forestall foreclosure. It's been foreclosed upon. End of story. The TRO expired because it was removed. You could have asked for a stay from the district court. You didn't do that. You could have asked for a stay from this court. You did not do that. Foreclosure has occurred. It's moot. Understood. But Judge Garcia's order prohibits and is final on the issues of statute of limitations to both Part A and B. So we cannot go back and challenge the fact that this sale of September of 2018 is late in terms of an acceleration that happened in 2 of 14. Now, Judge Garcia underscores that their notice of foreclosure was sent out in 2016. You just want something from us to tell him he was wrong? To set aside his motion for summary judgment, yes. That would then undo or give basis to undo the foreclosure sale. We're going in a circle now, Mr. Cantu. I think we've kind of heard all there is possible to be said, and we're going to just let that be the end of it. We'll deal with this, and we will decide this case. That much you can depend on. We will decide this case and move it off our docket. There is great value to a decision. Well, we get paid to make decisions, and we're going to make one here in as few words as possible. All right. Having said that, thank you both for your briefing and your argument in the case. We'll get it decided. The last case up is Springboard. You can come on up to the deal.